FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

## Sep 20, 2021

SEAN F. McAVOY, CLERK

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| PIETER R.,[1] | No. 1:20-cv-03094-MKD |
| Plaintiff, | |
| vs. | ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT |
| KILOLO KIJAKAZI, ACTING COMMISSIONER OF SOCIAL SECURITY,[2] | |
| Defendant. | ECF Nos. 17, 18 |

---

[1] To protect the privacy of plaintiffs in social security cases, the undersigned identifies them by only their first names and the initial of their last names. *See* LCivR 5.2(c).

[2] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Kilolo Kijakazi is substituted for Andrew M. Saul as the defendant in this suit. No further action need be taken to continue this suit. *See* 42 U.S.C. § 405(g).

ORDER - 1

Before the Court are the parties' cross-motions for summary judgment.  ECF Nos. 17, 18.  The parties consented to proceed before a magistrate judge.  ECF No. 6.  The Court, having reviewed the administrative record and the parties' briefing, is fully informed.  For the reasons discussed below, the Court denies Plaintiff's motion, ECF No. 17, and grants Defendant's motion, ECF No. 18.

## JURISDICTION

The Court has jurisdiction over this case pursuant to 42 U.S.C. § 1383(c)(3).

## STANDARD OF REVIEW

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g).  The scope of review under § 405(g) is limited; the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012).  "Substantial evidence" means "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Id*. at 1159 (quotation and citation omitted).  Stated differently, substantial evidence equates to "more than a mere scintilla[,] but less than a preponderance." *Id.* (quotation and citation omitted).  In determining whether the standard has been satisfied, a reviewing court must consider the entire record as a whole rather than searching for supporting evidence in isolation. *Id.*

ORDER - 2

1    In reviewing a denial of benefits, a district court may not substitute its

2    judgment for that of the Commissioner.  *Edlund v. Massanari*, 253 F.3d 1152,

3    1156 (9th Cir. 2001).  If the evidence in the record "is susceptible to more than one

4    rational interpretation, [the court] must uphold the ALJ's findings if they are

5    supported by inferences reasonably drawn from the record."  *Molina v. Astrue,* 674

6    F.3d 1104, 1111 (9th Cir. 2012).  Further, a district court "may not reverse an

7    ALJ's decision on account of an error that is harmless."  *Id.*  An error is harmless

8    "where it is inconsequential to the [ALJ's] ultimate nondisability determination."

9    *Id*. at 1115 (quotation and citation omitted).  The party appealing the ALJ's

10    decision generally bears the burden of establishing that it was harmed.  *Shinseki v.*

11    *Sanders*, 556 U.S. 396, 409-10 (2009).

## FIVE-STEP EVALUATION PROCESS

13    A claimant must satisfy two conditions to be considered "disabled" within

14    the meaning of the Social Security Act.  First, the claimant must be "unable to

15    engage in any substantial gainful activity by reason of any medically determinable

16    physical or mental impairment which can be expected to result in death or which

17    has lasted or can be expected to last for a continuous period of not less than twelve

18    months."  42 U.S.C. § 1382c(a)(3)(A).  Second, the claimant's impairment must be

19    "of such severity that he is not only unable to do his previous work[,] but cannot,

20    considering his age, education, and work experience, engage in any other kind of

ORDER - 3

substantial gainful work which exists in the national economy."  42 U.S.C. §

1382c(a)(3)(B).

The Commissioner has established a five-step sequential analysis to

determine whether a claimant satisfies the above criteria.  *See* 20 C.F.R. §

416.920(a)(4)(i)-(v).  At step one, the Commissioner considers the claimant's work

activity.  20 C.F.R. § 416.920(a)(4)(i).  If the claimant is engaged in "substantial

gainful activity," the Commissioner must find that the claimant is not disabled.  20

C.F.R. § 416.920(b).

If the claimant is not engaged in substantial gainful activity, the analysis

proceeds to step two.  At this step, the Commissioner considers the severity of the

claimant's impairment.  20 C.F.R. § 416.920(a)(4)(ii).  If the claimant suffers from

"any impairment or combination of impairments which significantly limits [his or

her] physical or mental ability to do basic work activities," the analysis proceeds to

step three.  20 C.F.R. § 416.920(c).  If the claimant's impairment does not satisfy

this severity threshold, however, the Commissioner must find that the claimant is

not disabled.  *Id.*

At step three, the Commissioner compares the claimant's impairment to

severe impairments recognized by the Commissioner to be so severe as to preclude

a person from engaging in substantial gainful activity.  20 C.F.R. §

416.920(a)(4)(iii).  If the impairment is as severe or more severe than one of the

ORDER - 4

1 | enumerated impairments, the Commissioner must find the claimant disabled and

2 | award benefits.  20 C.F.R. § 416.920(d).

3 | If the severity of the claimant's impairment does not meet or exceed the

4 | severity of the enumerated impairments, the Commissioner must pause to assess

5 | the claimant's "residual functional capacity."  Residual functional capacity (RFC),

6 | defined generally as the claimant's ability to perform physical and mental work

7 | activities on a sustained basis despite his or her limitations, 20 C.F.R. §

8 | 416.945(a)(1), is relevant to both the fourth and fifth steps of the analysis.

9 | At step four, the Commissioner considers whether, in view of the claimant's

10 | RFC, the claimant is capable of performing work that he or she has performed in

11 | the past (past relevant work).  20 C.F.R. § 416.920(a)(4)(iv).  If the claimant is

12 | capable of performing past relevant work, the Commissioner must find that the

13 | claimant is not disabled.  20 C.F.R. § 416.920(f).  If the claimant is incapable of

14 | performing such work, the analysis proceeds to step five.

15 | At step five, the Commissioner considers whether, in view of the claimant's

16 | RFC, the claimant is capable of performing other work in the national economy.

17 | 20 C.F.R. § 416.920(a)(4)(v).  In making this determination, the Commissioner

18 | must also consider vocational factors such as the claimant's age, education and

19 | past work experience.  *Id.*  If the claimant is capable of adjusting to other work, the

20 | Commissioner must find that the claimant is not disabled.  20 C.F.R. §

ORDER - 5

416.920(g)(1).  If the claimant is not capable of adjusting to other work, analysis concludes with a finding that the claimant is disabled and is therefore entitled to benefits.  *Id.*

The claimant bears the burden of proof at steps one through four above. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).  If the analysis proceeds to step five, the burden shifts to the Commissioner to establish that (1) the claimant is capable of performing other work; and (2) such work "exists in significant numbers in the national economy."  20 C.F.R. § 416.960(c)(2); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

## ALJ'S FINDINGS

On November 2, 2010, Plaintiff applied for Title XVI supplemental security income benefits alleging a disability onset of July 15, 2010.  Tr. 71, 158-67, 431. The application was denied initially, and on reconsideration.  Tr. 88-95, 101-09. Plaintiff appeared before an administrative law judge (ALJ) on October 23, 2013. Tr. 33-70.  On December 2, 2013, the ALJ denied Plaintiff's claim.  Tr. 17-32. Plaintiff appealed the denial to the Appeals Council; the Appeals Council declined to review the decision.  Tr. 1-6.  Plaintiff then appealed to this Court, which resulted in a remand.  Tr. 456-87.  Plaintiff appeared for a remand hearing on December 4, 2017.  Tr. 387-427.  On April 13, 2018, the ALJ again denied Plaintiff's claim.  Tr. 361-82.  Plaintiff again appealed to this Court, which resulted

in a stipulated remand.  Tr. 1058-64.  Plaintiff appeared for a third hearing on

February 26, 2020; Plaintiff amended his claim to request a closed period of

disability of July 15, 2010 through January 1, 2019.  Tr. 998-1029.  The ALJ again

denied Plaintiff's claim on March 12, 2020.  Tr. 974-97.

At step one of the sequential evaluation process, the ALJ found Plaintiff did

not engage in substantial gainful activity between November 2, 2010, Plaintiff's

application date, and December 31, 2018, the date Plaintiff reports medical

improvement.  Tr. 979.  At step two, the ALJ found that Plaintiff has the following

severe impairments: gastritis, duodenitis, migraines, and depression.  *Id.*

At step three, the ALJ found Plaintiff does not have an impairment or

combination of impairments that meets or medically equals the severity of a listed

impairment.  Tr. 980.  The ALJ then concluded that Plaintiff has the RFC to

perform light work with the following limitations:

> [Plaintiff] can occasionally lift and/or carry only 20 pounds and
> frequently lift and/or carry 10 pounds.  He can stand and walk with
> normal breaks for about 6 hours in an 8-hour workday or sit with
> normal breaks for about 6 hours in an 8-hour workday.  [Plaintiff] can
> understand, remember, and carry out simple instructions, exercise
> simple workplace judgment, perform work that is learned on the job in
> less than 30 days by short demonstration, practice, or repetition.  He
> can respond appropriately to supervision and can have superficial
> interaction with coworkers.  He can deal with occasional changes in
> the work environment and can do work that requires no interaction
> with the general public to perform the work task, which does not
> preclude working in an environment where the public is present.

Tr. 982.

ORDER - 7

At step four, the ALJ found Plaintiff has no past relevant work.  Tr. 989.  At step five, the ALJ found that, considering Plaintiff's age, education, work experience, RFC, and testimony from the vocational expert, there were jobs that existed in significant numbers in the national economy that Plaintiff could perform, such as packing line worker, marker, and assembler, production.  Tr. 990. Therefore, the ALJ concluded Plaintiff has not been under a disability, as defined in the Social Security Act, since the date of the application.  *Id.*

Per 20 C.F.R. § 416.1484, the ALJ's decision following this Court's prior remand became the Commissioner's final decision for purposes of judicial review.

## ISSUES

Plaintiff seeks judicial review of the Commissioner's final decision denying him supplemental security income benefits under Title XVI of the Social Security Act.  Plaintiff raises the following issues for review:

1.  Whether the ALJ properly evaluated Plaintiff's migraines;

2.  Whether the ALJ properly evaluated Plaintiff's symptom claims; and

3.  Whether the ALJ properly evaluated the medical opinion evidence.

ECF No. 17 at 2.

ORDER - 8

# DISCUSSION

## A. Migraines

Plaintiff faults the ALJ for not incorporating his migraine-related restrictions into the RFC.  ECF No. 17 at 3-4.  At step four of the sequential evaluation, the ALJ must determine the claimant's RFC.  20 C.F.R. § 416.920(a)(4)(iv).  "[T]he ALJ is responsible for translating and incorporating clinical findings into a succinct RFC." *Rounds v. Comm'r Soc. Sec. Admin.*, 807 F.3d 996, 1006 (9th Cir. 2015).  An ALJ's assessment of a claimant adequately captures restrictions where the assessment is consistent with restrictions identified in the medical testimony. *See Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1174 (9th Cir. 2008).  To the extent the evidence could be interpreted differently, it is the role of the ALJ to resolve conflicts and ambiguity in the evidence. *Morgan v. Comm'r Soc. Sec. Admin.*, 169 F.3d 595, 599-600 (9th Cir. 1999).  Where evidence is subject to more than one rational interpretation, the ALJ's conclusion will be upheld. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005); *Hill*, 698 F.3d at 1158 (recognizing the court only disturbs the ALJ's findings if they are not supported by substantial evidence).

Plaintiff argues the ALJ erred in finding Plaintiff's migraines to be a severe impairment, but not including any limitations related to Plaintiff's migraines, such as a limitation related to noise or light or needing to lay down, in the RFC.  ECF No. 17 at 3-4.  Plaintiff notes the medical records contain references to Plaintiff

1    having nausea and light sensitivity due to migraines, and Ms. Deselms opined

2    Plaintiff needs to lie down for 30 to 120 minutes during the day.  *Id.* at 3 (citing Tr.

3    279, 665).  Plaintiff does not point to any medical records to support his argument

4    he has sensitivity to noise.  Plaintiff also does not cite to any objective evidence of

5    limitations caused by his migraines beyond the single reference to his reported

6    nausea and light sensitivity.  While Plaintiff argues Ms. Deselms' opinion supports

7    the argument Plaintiff needs to lie down, Ms. Deselms noted that per Plaintiff's

8    report, he needs to lay down during the day due to pain or migraines.  Tr. 665.  Dr.

9    Vaughan also opined Plaintiff does not need to lie down during the day.  Tr. 359.

10   The ALJ found the medical records do not contain evidence of Plaintiff having

11   migraines as frequently as alleged, and Plaintiff reported being able to return to

12   working despite ongoing migraines.  Tr. 983, 1018.

13       Plaintiff argues the ALJ did not include any limitations in the RFC that

14   account for his migraines, ECF No. 17 at 3-4, however the ALJ noted the evidence

15   does not support any "greater limitations" than already included in the RFC, Tr.

16   983, indicating the RFC includes limitations that account for the migraines.

17   Plaintiff has not met his burden in demonstrating there are any additional

18   limitations caused by his migraines, that are supported by objective evidence, that

19   the ALJ failed to include.  Plaintiff is not entitled to remand on these grounds.

20

ORDER - 10

**B. Plaintiff's Symptom Claims**

Plaintiff faults the ALJ for failing to rely on reasons that were clear and convincing in discrediting his symptom claims. ECF No. 17 at 4-11. An ALJ engages in a two-step analysis to determine whether to discount a claimant's testimony regarding subjective symptoms. SSR 16–3p, 2016 WL 1119029, at *2. "First, the ALJ must determine whether there is objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Molina*, 674 F.3d at 1112 (quotation marks omitted). "The claimant is not required to show that [the claimant's] impairment could reasonably be expected to cause the severity of the symptom [claimant] has alleged; [the claimant] need only show that it could reasonably have caused some degree of the symptom." *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009).

Second, "[i]f the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the rejection." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (citations omitted). General findings are insufficient; rather, the ALJ must identify what symptom claims are being discounted and what evidence undermines these claims. *Id*. (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995); *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002) (requiring the ALJ to sufficiently

ORDER - 11

explain why it discounted claimant's symptom claims)).  "The clear and convincing [evidence] standard is the most demanding required in Social Security cases."  *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014) (quoting *Moore v. Comm'r of Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)).

Factors to be considered in evaluating the intensity, persistence, and limiting effects of a claimant's symptoms include: 1) daily activities; 2) the location, duration, frequency, and intensity of pain or other symptoms; 3) factors that precipitate and aggravate the symptoms; 4) the type, dosage, effectiveness, and side effects of any medication an individual takes or has taken to alleviate pain or other symptoms; 5) treatment, other than medication, an individual receives or has received for relief of pain or other symptoms; 6) any measures other than treatment an individual uses or has used to relieve pain or other symptoms; and 7) any other factors concerning an individual's functional limitations and restrictions due to pain or other symptoms.  SSR 16-3p, 2016 WL 1119029, at *7; 20 C.F.R. § 416.929(c).  The ALJ is instructed to "consider all of the evidence in an individual's record," to "determine how symptoms limit ability to perform work-related activities."  SSR 16-3p, 2016 WL 1119029, at *2.

The ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms, but that Plaintiff's

statements concerning the intensity, persistence, and limiting effects of his

symptoms were not entirely consistent with the evidence.  Tr. 983.

### 1. *Treatment Non-Compliance*

The ALJ found Plaintiff's allegations were inconsistent with his non-

compliance with treatment.  Tr. 984.  "[I]n order to get benefits, an individual must

follow treatment prescribed by his or her physician if the treatment can restore the

ability to work, unless the individual has an acceptable reason for failing to follow

the prescribed treatment."  *Orn v. Astrue*, 495 F.3d 625, 636-37 (9th Cir. 2007).

"A claimant's subjective symptom testimony may be undermined by an

unexplained, or inadequately explained, failure to . . . follow a prescribed course of

treatment."  *Trevizo v. Berryhill*, 871 F.3d 664, 679 (9th Cir. 2017) (citations

omitted).  Social Security Ruling 16-3p instructs that an ALJ "will not find an

individual's symptoms inconsistent with the evidence in the record on this basis

without considering possible reasons he or she may not comply with treatment or

seek treatment consistent with the degree of his or her complaints."  SSR 16-3p,

2016 WL 1119029, at *8.

The ALJ found Plaintiff was noncompliant with his mental health treatment.

Tr. 984.  The ALJ noted Plaintiff reported being out of his medications for months

without explanation.  *Id.*  However, the ALJ cited to a November 15, 2013 record

in which Plaintiff reported being out of two of his medications only since the end

ORDER - 13

of October.  Tr. 355.  Plaintiff also points to evidence that he was without

insurance in 2013.  Tr. 39.  The ALJ also cited to a record where Plaintiff had been

out of his antidepressant for a month, Tr. 984, however Plaintiff reported an

inability to afford his antidepressant, Tr. 314.  As the ALJ failed to consider

Plaintiff's reasons for not following prescribed treatment, the ALJ erred in

rejecting Plaintiff's statements due to Plaintiff's treatment non-compliance.

Disability benefits may not be denied because of the claimant's failure to obtain

treatment he cannot obtain for lack of funds.  *See Gamble v. Chater*, 68 F.3d 319,

321 (9th Cir. 1995).  However, the error is harmless as the ALJ gave other

supported reasons to reject Plaintiff's claims.  *See Molina,* 674 F.3d at1115.

   *2. Inconsistent Statements*

      The ALJ found that Plaintiff made inconsistent statements.  Tr. 984-85.  In

evaluating a claimant's symptom claims, an ALJ may consider the consistency of

an individual's own statements made in connection with the disability-review

process with any other existing statements or conduct under other circumstances.

*Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996) (The ALJ may consider

"ordinary techniques of credibility evaluation," such as reputation for lying, prior

inconsistent statements concerning symptoms, and other testimony that "appears

less than candid.").

The ALJ noted that Plaintiff testified he had previously had panic attacks three to four times per week, and they had decreased to only two per week since 2019.  Tr. 984.  Yet, Plaintiff reported panic attacks multiple times per day for three years as of October 2016, and Plaintiff also reported only having had some panic attacks for a two-week period as of November 2013, and by March 2018, Plaintiff reported panic attacks were happening several weeks apart.  Tr. 984, 1184, 1247.  Plaintiff argues the ALJ misstated the record, as Plaintiff testified his panic attacks decreased to two per day, not two per week.  ECF No. 17 at 9 (citing Tr. 1017).  Despite the ALJ's misstatement regarding one record, the record contains inconsistent statements regarding Plaintiff's panic attacks.  Plaintiff's testimony that he had three to four panic attacks per day, which reduced to two panic attacks per day, Tr. 1017, is inconsistent with Plaintiff's 2018 reports of having only one panic attack every week or less, Tr. 1247.

Plaintiff also reported he was unable to drive without anger issues and testified that he did not drive due to his mental health symptoms, but the medical records indicate Plaintiff did not have a driver's license due to an inability to pay the renewal fee, and he reported having access to his mother's car when he needed it.  Tr. 985 (citing Tr. 343); Tr. 417.  Plaintiff argues he never stated he did not drive, and that he had difficulties driving until he had medical improvement.  ECF No. 17 at 10.  However, Plaintiff has made inconsistent statements about his

frequency of driving.  *See* Tr. 51, 343, 417.  On this record, the ALJ reasonably concluded that Plaintiff made inconsistent statements.  This finding is supported by substantial evidence and was a clear and convincing reason to discount Plaintiff's symptom complaints.

### 3. Situational Stressors

The ALJ found Plaintiff's symptoms were caused in part by situational stressors.  Tr. 984-85.  If a claimant suffers from limitations that are transient and result from situational stressors, as opposed to resulting from a medical impairment, an ALJ may properly consider this fact in discounting Plaintiff's symptom claims.  *See Chesler v. Colvin*, 649 F. App'x 631, 632 (9th Cir. 2016) (symptom testimony properly rejected in part because "the record support[ed] the ALJ's conclusion that [plaintiff's] mental health symptoms were situational"); *but see Bryant v. Astrue*, No. C12-5040-RSM-JPD, 2012 WL 5293018, at *5-7 (W.D. Wash. Sept. 24, 2012) (concluding Plaintiff's stressors appeared to have a constant presence affecting ability to work on a continuing basis, rather than temporary exacerbation).

The ALJ found Plaintiff's mental health symptoms related to situational stressors, including Plaintiff being out of work, being homeless for a period, and going through a divorce.  Tr. 984-85.  When Plaintiff returned to work, he reported improvement in his symptoms.  Tr. 985.  Plaintiff argues his symptoms existed

ORDER - 16

outside of the situational stressors.  ECF No. 17 at 9-10.  While Plaintiff reported

some symptoms in relation to situational stressors, the records demonstrate

ongoing symptoms rather than temporary exacerbations.  However, any error in

finding Plaintiff's symptoms were due to situational stressors is harmless as the

ALJ gave other clear and convincing reasons to reject Plaintiff's claims.  *See*

*Molina,* 674 F.3d at 1115.

### 4. Improvement with Treatment

The ALJ found Plaintiff's allegations were inconsistent with his

improvement with treatment.  Tr. 983-85.  The effectiveness of treatment is a

relevant factor in determining the severity of a claimant's symptoms.  20 C.F.R. §

416.913(c)(3); *see Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th

Cir. 2006); *Tommasetti v. Astrue*, 533 F.3d 1035, 1040 (9th Cir. 2008) (a favorable

response to treatment can undermine a claimant's complaints of debilitating pain or

other severe limitations).

The ALJ found Plaintiff's mental health and physical symptoms improved

with treatment.  Tr. 983-85.  Plaintiff reported his gastritis improved with

medication in October 2010.  Tr. 983 (citing Tr. 263).  Plaintiff points to evidence

of gastrointestinal symptoms in 2010 and argues he had ongoing symptoms but

points only to his self-reported symptoms and does not point to objective evidence

of any ongoing gastrointestinal symptoms after the improvement with medication.

ORDER - 17

1  ECF No. 17 at 5 (citing to Tr. 45 (Plaintiff's hearing testimony regarding

2  symptoms); Tr. 1298, 1325-26 (counseling appointments where Plaintiff self-

3  reported seeing his primary care physician and having physical symptoms)).

4       Plaintiff also tolerated a hernia repair well in 2012, and he healed well, with

5  largely normal imaging after the surgery.  Tr. 983 (citing Tr. 797-907, 914-37).

6  Plaintiff argues he had ongoing symptoms prior to the hernia repair but does not

7  argue he had any ongoing symptoms after the repair.  ECF No. 17 at 5.  The ALJ

8  also found the evidence does not support Plaintiff's reported frequency of

9  migraines, and notes Plaintiff reported not having migraines in a while in March

10  2015, and not needing to take his medication.  Tr. 983 (citing Tr. 742).  Plaintiff

11  argues he had migraines twice per week in July 2011, and although they were

12  under better control in August 2011, he was again having multiple migraines per

13  week in 2013.  ECF No. 17 at 6 (citing Tr. 27, 46, 48, 279, 355).  Plaintiff again

14  largely cites to his self-report and argues he did not have medical insurance for a

15  portion of the period.  ECF No. 17 at 6.  Plaintiff's migraines were noted as

16  controlled in August 2011, Tr. 277, he reported decreased frequency of migraines

17  with medication in November 2013, Tr. 355, and reported not having migraines in

18  a while and not needing to take the medication for it in August 2015, Tr. 741.

19  Plaintiff had minimal treatment for his migraines during the relevant period, even

20  when he had insurance.  Plaintiff concedes he did not seek care for more than a

ORDER - 18

year in 2015.  ECF No. 17 at 6.  Plaintiff argues his migraines returned by 2017 and were "very bad" by February 2018, but Plaintiff cites again only to his self-reported symptoms at counseling appointments and does not cite to any ongoing treatment for his reported migraines.  *Id.* (citing Tr. 1250, 1262).  The ALJ noted Plaintiff improved enough he was able to return to working full-time with only minimal treatment.  Tr. 985.  Plaintiff attributes his ability to return to work to improvement with medications, including improvement in his migraines, but reports he began the medication for his migraines in 2017.  Tr. 1019.

Plaintiff argues he lacked insurance, and this accounts for the lack of ongoing medical care for his symptoms, however Plaintiff reported having insurance for much of the relevant adjudicative period, such as in 2012, Tr. 39-40, and even during the times he had insurance, Plaintiff does not point to any treatment for his physical symptoms, nor does he point to any objective evidence of his ongoing physical symptoms.  The only medical records Plaintiff submitted for his 2020 hearing are counseling records.  Tr. 1178-1330.  Despite Plaintiff's allegations that his physical impairments remained disabling after treatment, there are no records documenting any objective evidence or treatment for Plaintiff's physical complaints after 2017, despite Plaintiff reporting having medical insurance until 2019.  Tr. 1004.

ORDER - 19

Plaintiff reported improvement in his mental health symptoms with medication as well.  Tr. 984 (citing Tr. 263, 277).  The medical records indicate Plaintiff's depression was partially controlled with medication in October 2010, but he was "off work up to 2 months for treatment" in August 2011.  Tr. 263, 277.  However, Plaintiff stated "medication is working well for his depression."  Tr. 277.  In December 2012, Plaintiff's depression was noted as stable.  Tr. 800.  In August 2018, Plaintiff reported planning to get a CDL license and his provider noted Plaintiff's unemployment was the "largest factor that contributes to his depression" and Plaintiff "should be able to be discharged soon, hopefully with diagnosis removal."  Tr. 1223.  Plaintiff also reported improvement in his panic attacks with medication.  Tr. 1247.  When asked what changed from Plaintiff to being unable to work to being ready to work, Plaintiff responded, "zero income is what made me go out there and try to do something," and he reported "nothing has changed except for that I'm on medication all the time."  Tr. 1016.

Plaintiff points to records containing notes of abnormalities, including Plaintiff presenting as depressed and anxious, decreased eye contact, and impairments in functioning such as limited judgment.  ECF No. 17 at 7-8.  However, the ALJ also noted many records where Plaintiff was alert, oriented, had normal mood/affect, thoughts, and memory, was able to socialize with others, was pleasant and cooperative with normal eye contact, and was able to handle his

ORDER - 20

1  activities of daily living, Tr. 981, 983-84.  The Court may not reverse the ALJ's

2  decision based on Plaintiff's disagreement with the ALJ's interpretation of the

3  record.  *See Tommasetti*, 533 F.3d at 1038 ("[W]hen the evidence is susceptible to

4  more than one rational interpretation" the court will not reverse the ALJ's

5  decision).  As such, the ALJ's finding that Plaintiff's allegations are inconsistent

6  with his improvement with treatment was a clear and convincing reason to reject

7  Plaintiff's claims.

8          *5.  Activities of Daily Living*

9          The ALJ found Plaintiff's activities of daily living were inconsistent with his

10  allegations.  Tr. 985.  The ALJ may consider a claimant's activities that undermine

11  reported symptoms.  *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001).  If a

12  claimant can spend a substantial part of the day engaged in pursuits involving the

13  performance of exertional or non-exertional functions, the ALJ may find these

14  activities inconsistent with the reported disabling symptoms.  *Fair v. Bowen*, 885

15  F.2d 597, 603 (9th Cir. 1989); *Molina*, 674 F.3d at 1113.  "While a claimant need

16  not vegetate in a dark room in order to be eligible for benefits, the ALJ may

17  discount a claimant's symptom claims when the claimant reports participation in

18  everyday activities indicating capacities that are transferable to a work setting" or

19  when activities "contradict claims of a totally debilitating impairment."  *Molina*,

20  674 F.3d at 1112-13.

ORDER - 21

1    The ALJ noted Plaintiff was able to drive a car, handle yard work, spend

2    time with family, and care for his dogs.  Tr. 985.  The ALJ also noted that Plaintiff

3    can socialize with family, communicate with others by phone and social media, he

4    handles household chores, and has no issues with his personal care.  Tr. 981.

5    While the ALJ did not explain the inconsistencies between such activities and

6    Plaintiff's allegations, the ALJ provided an analysis of Plaintiff's ability to drive.

7    The ALJ noted Plaintiff reported he could not drive without anger issues, yet

8    Plaintiff reported driving on multiple occasions, and the ALJ found Plaintiff's

9    ability to drive was inconsistent with complaints of disabling mental health

10    symptoms.  Tr. 985.

11    The ALJ also pointed to Plaintiff's ability to work a paper route, and to

12    return to working above substantial gainful activity level in 2019.  *Id.*  While

13    Plaintiff alleges disability from November 2010 through December 2018,

14    Plaintiff's earning records demonstrate that he worked for a portion of 2014, 2015,

15    and 2018.  Tr. 1121-22.  Working with an impairment supports a conclusion that

16    the impairment is not disabling.  *See Drouin v. Sullivan*, 966 F.2d 1255, 1258 (9th

17    Cir. 1992); *see also Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1227 (9th

18    Cir. 2009) (seeking work despite impairment supports inference that impairment is

19    not disabling).  Plaintiff argues he had someone assist with the paper route, ECF

20    No. 17 at 10, but Plaintiff was going with another person six days per week to

ORDER - 22

make the deliveries, Tr. 398-99.  Plaintiff also testified at the 2017 hearing that he

had worked the paper route for 15 years, earning $800 to $1,300 per month, and

having earned $20,000 in 2016.  Tr. 398-401.  On this record, the ALJ reasonably

concluded that Plaintiff's allegations were inconsistent with his activities of daily

living.  This finding is supported by substantial evidence and was a clear and

convincing reason to discount Plaintiff's symptom complaints.

### 6. Inconsistent Objective Medical Evidence

The ALJ found Plaintiff's allegations were inconsistent with the objective

medical evidence.  Tr. 983-85.  An ALJ may not discredit a claimant's symptom

testimony and deny benefits solely because the degree of the symptoms alleged is

not supported by objective medical evidence.  *Rollins*, 261 F.3d at 857; *Bunnell v.*

*Sullivan*, 947 F.2d 341, 346-47 (9th Cir. 1991); *Fair*, 885 F.2d at 601; *Burch*, 400

F.3d at 680.  However, the objective medical evidence is a relevant factor, along

with the medical source's information about the claimant's pain or other

symptoms, in determining the severity of a claimant's symptoms and their

disabling effects.  *Rollins*, 261 F.3d at 857; 20 C.F.R. § 416.929(c)(2).

The ALJ found Plaintiff's complaints of disabling physical and mental

health symptoms were inconsistent with the objective evidence.  Tr. 983-85.  As

discussed *supra,* Plaintiff had improvement in several symptoms with treatment.

Tr. 983-84.  While Plaintiff complains of frequent migraines and panic attacks

ORDER - 23

throughout the relevant period, Plaintiff sought minimal treatment for his

symptoms through much of the period, even when he had insurance. *Id.* The ALJ

noted that while there are some document abnormalities, Plaintiff generally had

normal mental status findings. *Id.* (citing, e.g., Tr. 226-27, 266,269, 343-45). On

this record, the ALJ reasonably concluded that Plaintiff's allegations were

inconsistent with the objective medical evidence. This finding is supported by

substantial evidence and was a clear and convincing reason to discount Plaintiff's

symptom complaints.

    *7. Work History*

    The ALJ found Plaintiff's symptom claims were inconsistent with his work

history. Tr. 983. An ALJ may consider that a claimant stopped working for

reasons unrelated to the allegedly disabling condition in making a credibility

determination. *Bruton v. Massanari*, 268 F.3d 824, 828 (9th Cir. 2001). Plaintiff

reported that one job ended due a large scale lay off, rather than anything related to

his impairments. Tr. 983, 1006. Plaintiff also reported he resigned from a job in

2019 due to a disagreement with his employer's policies related to rules and

permits, not due to his impairments. Tr. 983, 1009. On this record, the ALJ

reasonably found Plaintiff's allegations were inconsistent with his work history.

This was a clear and convincing reason, supported by substantial evidence, to

ORDER - 24

1    reject Plaintiff's symptom claims.  Plaintiff is not entitled to remand on these

2    grounds.

3    **C. Medical Opinion Evidence**

4          Plaintiff argues the ALJ erred in his consideration of the opinions of Rick

5    Vaughan, M.D.; Aaron Burdge, Ph.D.; Megan Deselms, PA-C; Dave Hulslander,

6    M.S.; and Renee Eisenhauer, M.D.  ECF No. 17 at 11-21.  There are three types of

7    physicians: "(1) those who treat the claimant (treating physicians); (2) those who

8    examine but do not treat the claimant (examining physicians); and (3) those who

9    neither examine nor treat the claimant [but who review the claimant's file]

10   (nonexamining [or reviewing] physicians)." *Holohan v. Massanari,* 246 F.3d

11   1195, 1201-02 (9th Cir. 2001) (citations omitted).  Generally, a treating physician's

12   opinion carries more weight than an examining physician's, and an examining

13   physician's opinion carries more weight than a reviewing physician's opinion. *Id.*

14   at 1202.  "In addition, the regulations give more weight to opinions that are

15   explained than to those that are not, and to the opinions of specialists concerning

16   matters relating to their specialty over that of nonspecialists." *Id*. (citations

17   omitted).

18         If a treating or examining physician's opinion is uncontradicted, the ALJ

19   may reject it only by offering "clear and convincing reasons that are supported by

20   substantial evidence." *Bayliss v. Barnhart,* 427 F.3d 1211, 1216 (9th Cir. 2005).

1 "However, the ALJ need not accept the opinion of any physician, including a

2 treating physician, if that opinion is brief, conclusory and inadequately supported

3 by clinical findings." *Bray*, 554 F.3d at 1228 (internal quotation marks and

4 brackets omitted).  "If a treating or examining doctor's opinion is contradicted by

5 another doctor's opinion, an ALJ may only reject it by providing specific and

6 legitimate reasons that are supported by substantial evidence." *Bayliss*, 427 F.3d at

7 1216 (citing *Lester*, 81 F.3d at 830-31).  The opinion of a nonexamining physician

8 may serve as substantial evidence if it is supported by other independent evidence

9 in the record.  *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995).

10 "Only physicians and certain other qualified specialists are considered

11 '[a]cceptable medical sources.'" *Ghanim*, 763 F.3d at 1161 (alteration in original);

12 *see* 20 C.F.R. § 416.913 (2013).[3]  However, an ALJ is required to consider

13 evidence from non-acceptable medical sources, such as therapists.  20 C.F.R. §

14

15

16

17

---

18 [3] The regulation that defines acceptable medical sources is found at 20 C.F.R. §

19 416.902 for claims filed after March 27, 2017.  The Court applies the regulation in

20 effect at the time the claim was filed.

ORDER - 26

416.913(d) (2013).[4]  An ALJ may reject the opinion of a non-acceptable medical source by giving reasons germane to the opinion.  *Ghanim*, 763 F.3d at 1161.

### 1. Dr. Vaughan

#### a. 2010 opinion

On August 26, 2010, Dr. Vaughan, a treating provider, rendered an opinion on Plaintiff's functioning.  Tr. 221-22.  Dr. Vaughan opined Plaintiff could stand and sit for eight hours each in an eight-hour workday, Plaintiff was not limited in his lifting abilities, and he did not have gross/fine motor skill, postural, nor environmental restrictions.  *Id.*  Dr. Vaughan opined Plaintiff's work functioning would be limited for two months.  Tr. 221.  The ALJ gave Dr. Vaughan's 2010 opinion little weight.  Tr. 985-86.  As this Court previously noted, the ALJ was required to give specific and legitimate reasons to reject Dr. Vaughan's opinions. *See Rumburg v. Colvin,* No. 1:15-cv-033098-MKD (E.D. Wash. Sept. 27, 2016), ECF No. 20 at 10.

First, the ALJ found Dr. Vaughan's 2010 opinion lacked a supporting explanation.  Tr. 986.  The Social Security regulations "give more weight to

---

[4] The regulation that requires an ALJ's consider opinions from non-acceptable medical sources is found at 20 C.F.R. § 416.920c for claims filed after March 27, 2017.  The Court applies the regulation in effect at the time the claim was filed.

opinions that are explained than to those that are not." *Holohan*, 246 F.3d at 1202.

"[T]he ALJ need not accept the opinion of any physician, including a treating

physician, if that opinion is brief, conclusory and inadequately supported by

clinical findings." *Bray*, 554 at 1228.  Dr. Vaughan's opinion does not contain any

explanation.  Tr. 221-22.  However, it is not a proper basis to reject an opinion that

is in the form of a questionnaire if the opinion is supported by treatment notes.

*Esparza v. Colvin*, 631 F.App'x 460 (9th Cir. 2015).  Dr. Vaughan's notes

demonstrate worsening depression, reports that medication was not working, and

later opinions that Plaintiff's depression interfered with his ability to work.  Tr.

223, 276-78, 359-60.  However, the ALJ also noted Dr. Vaughan's records indicate

Plaintiff later had improvement with medication, and Plaintiff reported being able

to handle daily activities and was later able to return to working.  Tr. 986.  In his

analysis of the medical records, the ALJ noted that Plaintiff was generally

observed as having normal orientation, mood, affect, speech, cognitive

functioning, thoughts, memory, concentration, insight/judgment, and eye contact.

Tr. 983-94.  Although treatment notes exist in the record, they do not support the

opined limitations.  The ALJ's finding that Dr. Vaughan's opinion lacked a

supporting explanation was a specific and legitimate reason, supported by

substantial evidence, to reject Dr. Vaughan's opinion.

1    Second, the ALJ found Dr. Vaughan's 2010 opinion was internally

2    inconsistent.  Tr. 986.  Relevant factors to evaluating any medical opinion include

3    the amount of relevant evidence that supports the opinion, the quality of the

4    explanation provided in the opinion, and the consistency of the medical opinion

5    with the record as a whole.  *Lingenfelter v. Astrue*, 504 F.3d 1028, 1042 (9th Cir.

6    2007); *Orn*, 495 F.3d at 631.  Moreover, a physician's opinion may be rejected if it

7    is unsupported by the physician's treatment notes.  *See Connett v. Barnhart*, 340

8    F.3d 871, 875 (9th Cir. 2003).  Despite finding that Plaintiff had impaired work

9    functioning, Dr. Vaughan did not find Plaintiff had any specific functional

10   limitations.  Tr. 221.  Dr. Vaughan also opined that Plaintiff's condition was stable,

11   rather than deteriorating or improving, yet found Plaintiff's limitations would only

12   last two months.  *Id.*  This was a specific and legitimate reason to reject Dr.

13   Vaughan's opinion.

14   Third, the ALJ found Dr. Vaughan's 2010 opinion was temporary in nature.

15   Tr. 986.  Temporary limitations are not enough to meet the durational requirement

16   for a finding of disability.  20 C.F.R. § 416.905(a) (requiring a claimant's

17   impairment to be expected to last for a continuous period of not less than twelve

18   months); 42 U.S.C. § 423(d)(1)(A) (same); *Carmickle v. Comm'r of Soc. Sec.

19   Admin.*, 533 F.3d 1155, 1165 (9th Cir. 2008) (affirming the ALJ's finding that

20   treating physicians' short-term excuse from work was not indicative of "claimant's

ORDER - 29

1    long-term functioning"). This Court previously found it was an error for the ALJ

2    to reject Dr. Vaughan's 2010 opinion as being temporary, when the ALJ failed to

3    consider the 2011 and 2013 opinions. *See Rumburg,* No. 1:15-cv-033098-MKD,

4    ECF No. 20 at 11-12. The ALJ has now considered the 2010 opinion in addition to

5    the 2011 and 2013 opinions and found the 2010 reflected a temporary limitation.

6    Tr. 986. As the ALJ now considered the 2010 opinion in the context of the other

7    two opinions, and the ALJ's rejection of the other two opinions was also supported

8    by substantial evidence as discussed *infra*, this was a specific and legitimate reason

9    to reject the opinion.

10              b.  2011 opinion

11         On August 31, 2011, Dr. Vaughan opined Plaintiff was not able to work for

12    two months because of depression. Tr. 275. The ALJ gave Dr. Vaughan's 2011

13    opinion little weight. Tr. 985-86. As Dr. Vaughan's opinion is contradicted by the

14    opinion of Dr. Eisenhauer, Tr. 674, the ALJ was required to give specific and

15    legitimate reasons to reject Dr. Vaughan's opinion. *See Bayliss*, 427 F.3d at 1216.

16         First, the ALJ found Dr. Vaughan's 2011 opinion was inconsistent with his

17    treatment notes. Tr. 986. A medical opinion may be rejected if it is unsupported

18    by medical findings. *Bray*, 554 F.3d at 1228; *Batson v. Comm'r of Soc. Sec.*

19    *Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004); *Thomas*, 278 F.3d at 957;

20    *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001); *Matney v. Sullivan*,

ORDER - 30

1   981 F.2d 1016, 1019 (9th Cir. 1992).  Furthermore, a physician's opinion may be

2   rejected if it is unsupported by the physician's treatment notes.  *Connett*, 340 F.3d

3   at 875.  Dr. Vaughan cited to clinic notes from July 29, 2011 and August 29, 2011

4   to support his opinion.  Tr. 276.  The ALJ found the July 29 note indicates Plaintiff

5   had depression and headaches, and Plaintiff reported stress associated with getting

6   married soon.  Tr. 986 (citing Tr. 279).  Plaintiff had a depressed mood, impaired

7   sleep, increased headaches/migraines, and was anxious, with decreased

8   psychomotor and eye contact, but normal thoughts and speech.  Tr. 280.  The

9   August note indicates Plaintiff reported his medication was working well for his

10  depression, he had no headaches or migraines recently, and he was sleeping well,

11  though he had decreased motivation and some anger/irritability.  Tr. 986 (citing Tr.

12  277).  Plaintiff had a normal mood and affect, "good eye contact and

13  psychomotor," and was negative for anhedonia and suicidal ideation.  Tr. 277.

14  Given the largely normal psychological findings only two days before Dr.

15  Vaughan rendered his opinion, the ALJ reasonably found the opinion was

16  inconsistent with Dr. Vaughan's treatment notes.

17       Second, the ALJ found Dr. Vaughan's 2011 opinion lacked specificity.  Tr.

18  986.  A medical opinion may be rejected by the ALJ if it is conclusory or

19  inadequately supported.  *Bray*, 554 F.3d at 1228.  Furthermore, an ALJ may reject

20  an opinion that does "not show how [a claimant's] symptoms translate into specific

ORDER - 31

functional deficits which preclude work activity." *See Morgan,* 169 F.3d at 601.

Dr. Vaughan opined Plaintiff needed to be off work for two months due to

depression, which Plaintiff was being treated and followed for every two to three

weeks.  Tr. 276.  However, Dr. Vaughan did not explain what symptoms or

limitations rendered Plaintiff unable to work, and did not explain how treatment

interfered with Plaintiff's ability to work given the appointments were only ever

two to four weeks.  *See id.*  This was a specific and legitimate reason to reject Dr.

Vaughan's 2011 opinion.

Third, the ALJ found Dr. Vaughan's 2011 opinion did not meet the duration

requirement.  Tr. 986.  Temporary limitations are not enough to meet the

durational requirement for a finding of disability.  20 C.F.R. § 416.905(a).  Like

the 2010 opinion, the ALJ reasonably found the 2011 opinion did not meet the

duration requirement.  While Plaintiff argues the ALJ failed to consider the opinion

in the context of the 2013 opinion, ECF No. 17 at 14, the ALJ gave valid reasons

to reject the 2013 opinion, as discussed *infra.*

c.  2013 opinion

On December 2, 2013, Dr. Vaughan diagnosed Plaintiff with depression,

adrenal tumor, hiatal hernia, and migraines.  Tr. 359.  Dr. Vaughan opined Plaintiff

does not need to lie down during the day, his conditions are not reasonably likely

to cause pain, his prognosis is good, working on a regular basis would not cause

ORDER - 32

1 Plaintiff's condition to deteriorate, and if Plaintiff tried to work full-time, he would

2 miss some work due to impairments, but it was unpredictable how much work he

3 would miss until Plaintiff's depression was under control.  Tr. 359-60.  The ALJ

4 gave Dr. Vaughan's 2013 opinion little weight.  Tr. 985-86.  As Dr. Vaughan's

5 opinion is contradicted by the opinion of Dr. Eisenhauer, Tr. 674, the ALJ was

6 required to give specific and legitimate reasons to reject Dr. Vaughan's opinion.

7 *See Bayliss*, 427 F.3d at 1216.

8       First, the ALJ found the 2013 opinion was vague and did not contain any

9 specific limitations.  Tr. 986.  A medical opinion may be rejected by the ALJ if it is

10 conclusory or inadequately supported.  *Bray*, 554 F.3d at 1228.  Furthermore, an

11 ALJ may reject an opinion that does "not show how [a claimant's] symptoms

12 translate into specific functional deficits which preclude work activity."  *See*

13 *Morgan,* 169 F.3d at 601.  While Dr. Vaughan opined Plaintiff would miss work if

14 he worked full-time, he stated it was unpredictable how often Plaintiff would miss

15 work until his depression was under control.  Tr. 360.  Dr. Vaughan otherwise

16 opined Plaintiff did not have any limitations and noted Plaintiff's prognosis was

17 "good."  Tr. 359-60.

18       This Court previously noted the vocational expert testified that missing more

19 than one day a month of work would likely lead to termination.  *See Rumburg,* No.

20 1:15-cv-033098-MKD, ECF No. 20 at 12.  However, this discussion was in the

ORDER - 33

1  context of the ALJ failing to address the 2011 and 2013 opinions in their entirety,

2  and the Court did not make a finding that Dr. Vaughan's 2013 opinion was a

3  disabling opinion, but rather that it could potentially be interpreted as a disabling

4  opinion but the ALJ had failed to analyze it.  The ALJ has now analyzed the

5  opinions and determined the 2013 opinion did not provide any specific limitations.

6  Tr. 986.  Plaintiff argues that the opinion that Plaintiff would miss an unpredictable

7  amount of work is disabling because the vocational expert testified missing one

8  day of work or more per month would lead to termination.  ECF No. 17 at 14-15.

9  However, Dr. Vaughan was presented with the options to select that Plaintiff

10  would miss one, two, three, or four or more days per month, and Dr. Vaughan did

11  not select any of those options, but only wrote it was unpredictable how much

12  work Plaintiff would miss.  Tr. 360.  The opinion could indicate Plaintiff would

13  miss less than one day per month and would only unpredictably miss portions of a

14  day or one day every few months, and thus is not clearly a disabling opinion.  The

15  ALJ reasonably found Dr. Vaughan's opinion does not contain any specific

16  limitations.

17      Second, the ALJ found the 2013 opinion was inconsistent with the

18  longitudinal record.  Tr. 986.  An ALJ may discredit physicians' opinions that are

19  unsupported by the record as a whole.  *Batson*, 359 F.3d at 1195.  Moreover, the

20  extent to which a medical source is "familiar with the other information in [the

ORDER - 34

1  claimant's] case record" is relevant in assessing the weight of that source's medical

2  opinion.  *See* 20 C.F.R. § 416.927(c)(6).  The ALJ found Dr. Vaughan's 2013

3  opinion was inconsistent with the record as a whole, which demonstrated

4  Plaintiff's lack of ongoing significant mental health care, periods in which Plaintiff

5  did not take his medication, Plaintiff's symptom improvement when he did take his

6  medication, and Plaintiff's ability to handle his daily activities, interact

7  appropriately with care providers, and return to working at a substantial gainful

8  activity level without change in his impairments.  Tr. 986.  As discussed *supra,* the

9  ALJ reasonably found Plaintiff had improvement in his symptoms with treatment

10  and that the objective evidence and Plaintiff's ability to work is inconsistent with

11  disabling limitations.  This was a specific and legitimate reason to reject the

12  opinion.

13         Third, the ALJ noted Dr. Vaughan rendered his 2013 opinion after Plaintiff

14  requested his assistance obtaining Social Security benefits.  Tr. 986.  The purpose

15  for which medical reports are obtained does not provide a legitimate basis for

16  rejecting them; an examining doctor's findings are entitled to no less weight when

17  the examination is procured by the claimant than when it is obtained by the

18  Commissioner.  *See Lester*, 81 F.3d at 832 (citing *Ratto v. Sec'y, Dept. of Health*

19  *and Human Servs.*, 839 F. Supp. 1415, 1426 (D. Or. 1993)).  Although the ALJ

20  erred in rejecting the opinion due to Plaintiff seeking the provider's assistance with

ORDER - 35

obtaining Social Security benefits, the error is harmless as the ALJ gave other

specific and legitimate reasons to reject Dr. Vaughan's 2013 opinion.  *See Molina,*

674 F.3d at1115.

### 2. Dr. Burdge

On February 21, 2012, Dr. Burdge, an examining source, performed a

psychological examination and rendered an opinion on Plaintiff's functioning.  Tr.

340-54.  Dr. Burdge diagnosed Plaintiff with major depressive disorder, recurrent,

without psychotic features.  Tr. 345.  Dr. Burdge opined plaintiff is unlikely to

function adequately in a work setting until his psychological symptoms have been

managed more effectively; a period of 12-14 months may be sufficient to address

his treatment needs and allow him to resume working; Plaintiff has no limitations

in his ability to understand, remember, and persist in simple tasks, to perform

activities within a schedule and maintain regular punctual attendance, and adapt to

changes in a routine work setting; mild limitations in his ability to understand,

remember, and persist in tasks by following complex instructions, ask simple

questions or request assistance, communicate and perform effectively in a work

setting with public contact, and communicate and perform effectively in a work

setting with limited public contact; moderate limitations in his ability to learn new

tasks, make work-related decisions, be aware of normal hazards and take

appropriate precautions, maintain appropriate behavior in a work setting, and set

1  realistic goals and plan independently; and marked limitations in his ability to

2  complete a normal workday and workweek without interruptions from

3  psychologically based symptoms.  Tr. 346.  The ALJ gave Dr. Burdge's opinion

4  some weight; the ALJ found Dr. Burdge's opinion regarding no more than

5  moderate limitations was consistent with the evidence, but the marked limitation

6  was not supported.  Tr. 988.  As this Court previously noted, the ALJ was required

7  to give specific and legitimate reasons to reject Dr. Burdge's opinions.  *See*

8  *Rumburg,* No. 1:15-cv-033098-MKD, ECF No. 20 at 14.

9       First, the ALJ found Dr. Burdge's opinion related to Plaintiff having a

10  marked limitation in completing a workday/workweek is not supported by a

11  narrative explanation.  Tr. 988.  The Social Security regulations "give more weight

12  to opinions that are explained than to those that are not."  *Holohan*, 246 F.3d at

13  1202.  "[T]he ALJ need not accept the opinion of any physician, including a

14  treating physician, if that opinion is brief, conclusory and inadequately supported

15  by clinical findings."  *Bray*, 554 at 1228.  Dr. Burdge noted Plaintiff had suffered

16  from depression for nearly a year, it would likely be moderately well managed

17  with treatment, but Plaintiff's physical and psychological symptoms have a

18  reciprocal relationship, and Plaintiff's prognosis is guarded.  Tr. 345-46.  Dr.

19  Burdge noted Plaintiff is unlikely to function adequately in a work setting until his

20  psychological symptoms have been managed more effectively.  Tr. 346.  However,

ORDER - 37

1  Dr. Burdge opined Plaintiff had only mild to moderate limitations in all areas of

2  functioning except a marked limitation in his ability to complete a normal

3  workday/workweek.  *Id.*  Dr. Burdge does not point to any specific symptoms,

4  limitations, or examination results that support his opinion that Plaintiff would be

5  unable to complete a normal workday/workweek.  Plaintiff argues Dr. Burdge

6  supported the opinion with the general narrative and the accompanying

7  examination.  However, any error is harmless as the ALJ gave other specific and

8  legitimate reasons to reject the opinion.  *See Molina,* 674 F.3d at 1115.

9      Second, the ALJ found Dr. Burdge's opinion was inconsistent with the

10  record as whole.  Tr. 988.  Relevant factors when evaluating a medical opinion

11  include the amount of relevant evidence that supports the opinion and the

12  consistency of the medical opinion with the record as a whole.  *Lingenfelter*, 504

13  F.3d at 1042; *Orn*, 495 F.3d at 631.  This Court previously found the ALJ erred in

14  rejecting Dr. Burdge's opinion as inconsistent with the evidence, when the ALJ did

15  not provide an analysis as to how any specific evidence was inconsistent with the

16  opinion, and the Court found the ALJ's analysis of the mental status examination

17  being inconsistent was not a sufficient reason alone to reject Dr. Burdge's opinion.

18  *See Rumburg,* No. 1:15-cv-033098-MKD, ECF No. 20 at 15-16.  The ALJ has now

19  added additional analysis of the opinion.  The ALJ noted Plaintiff's depressive

20  symptoms at times were attributed to situational stressors, including

ORDER - 38

1 unemployment, Plaintiff's symptoms improved, and he was able to return to work

2 full-time. Tr. 988. While Dr. Burdge opined Plaintiff had disabling psychological

3 limitations, Plaintiff testified he was able to return to full-time employment

4 without any change in his mental health symptoms. Tr. 985. The ALJ also noted

5 Plaintiff had minimal mental health treatment for much of the relevant period, and

6 records generally contain observations of minimal psychological difficulties. Tr.

7 988. The ALJ found that while there are occasional abnormalities such as mild

8 depression noted, the records demonstrate Plaintiff generally was alert, oriented,

9 had normal mood, affect, eye contact, insight/judgment, and memory, no

10 psychomotor agitation, and he was cooperative and talkative, with normal

11 cognitive functioning. Tr. 983-84 (citing, e.g., 226-27, 25632, 344-45, 356). This

12 was a specific and legitimate reason, supported by substantial evidence, to reject

13 Dr. Burdge's opinion.

14       *3. Ms. Deselms*

15       On June 14, 2017, Ms. Deselms, a treating physician assistant, rendered an

16 opinion on Plaintiff's functioning. Tr. 665-66. Ms. Deselms diagnosed Plaintiff

17 with lumbago and migraines. Tr. 665. She stated that per Plaintiff's report, he

18 needs to lie down for 20-130 minutes per day due to pain/migraines, and Plaintiff

19 would miss some work due to medical impairments if he tried to work full-time.

20 Tr. 665-66. The ALJ gave Ms. Deselms' opinion little weight. Tr. 987. As Ms.

1  Deselms is not an acceptable medical source, the ALJ was required to give

2  germane reasons to reject the opinion.  *See Ghanim*, 763 F.3d at 1161.

3      First, the ALJ found Ms. Deselms' opinion was heavily reliant on Plaintiff's

4  subjective complaints.  Tr. 987.  An opinion may also be rejected if it is too heavily

5  based on a claimant's properly discounted complaints.  *Tonapetyan*, 242 F.3d at

6  1149.  The ALJ noted Ms. Deselms indicated Plaintiff had not had a complete

7  workup nor treatment for his pain, and the opinion lacks support from the objective

8  evidence.  Tr. 987.  Plaintiff argues Ms. Deselms did not overly rely on Plaintiff's

9  self- report, ECF No. 17 at 17-18, however this is inconsistent with the evidence;

10 Ms. Deselms explicitly wrote that some of the opinion was "per patient" report,

11 and put portions of her responses in quotation marks, indicating she was quoting

12 Plaintiff.  Tr. 665.  Ms. Deselms also wrote she first saw Plaintiff on July 8, 2016,

13 when he mentioned chronic back pain, and stated Plaintiff was "not seen for pain

14 again until today."  *Id.*  Ms. Deselms stated a complete workup was needed for her

15 to be able "accurately answer these questions."  Tr. 666.  As such, the ALJ found

16 Ms. Deselms relied too heavily on Plaintiff's complaints in formulating her

17 opinion.  *Id.*  As the ALJ gave clear and convincing reasons to reject Plaintiff's

18 claims, as discussed *supra,* the ALJ reasonably rejected Ms. Deselms' opinion due

19 to the reliance on Plaintiff's complaints.

20

Second, the ALJ found Ms. Deselms' opinion was inconsistent with the objective medical evidence. Tr. 987. Relevant factors when evaluating a medical opinion include the amount of relevant evidence that supports the opinion and the consistency of the medical opinion with the record as a whole. *Lingenfelter*, 504 F.3d at 1042; *Orn*, 495 F.3d at 631. The ALJ noted Ms. Deselms opinion was not supported by the objective evidence, which generally demonstrated Plaintiff arrived on time to appointments, and was in no acute distress, there were minimal observations of psychological difficulties, and Plaintiff had improvement with minimal treatment. Tr. 987. Plaintiff argues the evidence is consistent with Ms. Deselms' opinion, but Plaintiff concedes he was not seen for treatment between November 2013 and March 2015, and between August 2015 and October 2016, ECF No. 17 at 19, which supports the ALJ's finding that Plaintiff received limited treatment. This was a germane reason to reject Ms. Deselms' opinion.

*4. Mr. Hulslander*

On June 13, 2017, Mr. Hulslander, a treating counselor, rendered an opinion on Plaintiff's functioning. Tr. 661-63. Mr. Hulslander opined Plaintiff has no significant limitations in his ability to sustain an ordinary routine without special supervision, maintain socially appropriate behavior and adhere to basic standards of neatness/cleanliness, be aware of normal hazards and take appropriate precautions; moderate limitations in his ability to perform activities within a

schedule, maintain regular attendance, and be punctual within customary tolerances, interact appropriate with the general public, ask simple questions or request assistance, travel in unfamiliar places or use public transportation, set realistic goals or make plans independently of others, and in his activities of daily living and maintaining concentration, persistence or pace; and marked limitations in his ability to remember locations and work-like procedures, understand/remember very short and simple instructions, carry out very short simple instructions, maintain attention/concentration for extended periods, work in coordination with or proximity to others without being distracted by them, make simple work-related decisions, complete a normal workday/workweek without interruptions from psychologically-based symptoms and perform at a consistent pace without an unreasonable number and length of rest periods, accept instructions and respond appropriately to criticism from supervisors, get along with coworkers or peers without distracting them or exhibiting behavioral extremes, respond appropriately to changes in the work setting, and maintaining social functioning; and severe limitations in his ability to understand and remember detailed instructions, and carry out detailed instructions. Tr. 661-63. Mr. Hulslander further opined Plaintiff would be off task less than 12 percent of the time but would miss four or more days per month if he worked full-time. Tr. 663. The ALJ gave Mr. Hulslander's opinion little weight. Tr. 987-88. As Mr.

ORDER - 42

1  Hulslander is not an acceptable medical source, the ALJ was required to give

2  germane reasons to reject the opinion.  *See Ghanim*, 763 F.3d at 1161.

3      First, the ALJ found Mr. Hulslander did not provide any explanation or

4  support for his opinion.  Tr. 987.  The Social Security regulations "give more

5  weight to opinions that are explained than to those that are not."  *Holohan*, 246

6  F.3d at 1202.  "[T]he ALJ need not accept the opinion of any physician, including

7  a treating physician, if that opinion is brief, conclusory and inadequately supported

8  by clinical findings."  *Bray*, 554 at 1228.  Mr. Hulslander completed the checkbox

9  questionnaire but did not write any explanation for his opinion.  Tr. 661-63.  While

10 it is not a proper basis to reject an opinion that is in the form of a questionnaire if

11 the opinion is supported by treatment notes, *Esparza*, 631 F. App'x at 460, Mr.

12 Hulslander's opinion is not supported by his treatment notes, as discussed *infra*.

13 This was a germane reason to reject the opinion.

14      Second, the ALJ found Mr. Hulslander's opinion was inconsistent with the

15 objective evidence.  Tr. 988.  Relevant factors when evaluating a medical opinion

16 include the amount of relevant evidence that supports the opinion and the

17 consistency of the medical opinion with the record as a whole.  *Lingenfelter*, 504

18 F.3d at 1042; *Orn*, 495 F.3d at 631.  The ALJ found Mr. Hulslander's opinion was

19 inconsistent with the treatment notes, which contained minimal observations of

20 psychological difficulties and showed improvement with medication.  Tr. 987-88.

ORDER - 43

1    Plaintiff argues the ALJ failed to consider his barriers to treatment that contributed

2    to the minimal psychological observations, ECF No. 17 at 19-20, however even

3    when Plaintiff was seen for treatment, the observations were largely normal to mild

4    symptoms.  Further, Plaintiff reported he had medical insurance in 2012, yet did

5    not seek ongoing psychological care during that time.  Tr. 39-40.  This was a

6    germane reason to reject Mr. Hulslander's opinion.

7         Plaintiff argues the ALJ failed to address Mr. Hulslander's entire opinion,

8    including the moderate limitations, ECF No. 17 at 19, however the ALJ noted Mr.

9    Hulslander's opinion included marked and severe limitations; the ALJ thus

10    observed that less than marked and severe limitations were included in the opinion,

11    Tr. 987.

12        *5.  Dr. Eisenhauer*

13        On March 14, 2012, Dr. Eisenhauer, a reviewing doctor, rendered an opinion

14    on Plaintiff's functioning.  Tr. 674.  Dr. Eisenhauer reviewed Dr. Burdge's

15    examination and opinion, and opined Plaintiff's diagnosis of major depression was

16    reasonably supported but opined the severity and functional limitations contained

17    in Dr. Burdge's opinion were not consistent with the medical evidence.  *Id.*  Dr.

18

19

20

ORDER - 44

1   Eisenhauer opined the evidence was not supportive of any marked limitations. *Id.*

2   The ALJ gave Dr. Eisenhauer's opinion great weight.  Tr. 988.

3       Plaintiff argues the ALJ erred in giving great weight to Dr. Eisenhauer's

4   opinion over treating opinions.  ECF No. 17 at 21.  The opinion of a nonexamining

5   physician may serve as substantial evidence if it is supported by other evidence in

6   the record and is consistent with it.  *Andrews*, 53 F.3d at 1041.  Other cases have

7   upheld the rejection of an examining or treating physician based in part on the

8   testimony of a non-examining medical advisor when other reasons to reject the

9   opinions of examining and treating physicians exist independent of the non-

10  examining doctor's opinion.  *Lester*, 81 F.3d at 831 (citing *Magallanes v. Bowen*,

11  881 F.2d 747, 751-55 (9th Cir. 1989) (reliance on laboratory test results, contrary

12  reports from examining physicians and testimony from claimant that conflicted

13  with treating physician's opinion)); *Roberts v. Shalala*, 66 F.3d 179, 184 (9th Cir.

14  1995) (rejection of examining psychologist's functional assessment which

15  conflicted with his own written report and test results).  Thus, case law requires not

16  only an opinion from the consulting physician but also substantial evidence (more

17  than a mere scintilla but less than a preponderance), independent of that opinion

18  which supports the rejection of contrary conclusions by examining or treating

19  physicians.  *Andrews*, 53 F.3d at 1039.

20

ORDER - 45

1   Dr. Eisenhauer's opinion that Plaintiff has less than marked limitations is

2   supported by substantial evidence and consistent with the evidence.  As discussed

3   herein, despite Plaintiff's allegations of disabling limitations, he has not sought

4   treatment for his conditions for much of the relevant period, even when he had

5   insurance.  Dr. Eisenhauer noted Plaintiff's depressive symptoms had improved

6   and were partially controlled, Plaintiff manages his own care, cares for his dog,

7   and handles some household chores, communicates with others, and had a

8   generally normal examination by Dr. Burdge's despite some abnormalities.  Tr.

9   674.  These findings are consistent with the record, which demonstrated

10  improvement with treatment, and higher functioning than alleged.  The ALJ did

11  not error in relying on Dr. Eisenhauer's opinion.  Plaintiff is not entitled to remand

12  on these grounds.

### CONCLUSION

14  Having reviewed the record and the ALJ's findings, the Court concludes the

15  ALJ's decision is supported by substantial evidence and free of harmful legal error.

16  Accordingly, **IT IS HEREBY ORDERED**:

17  1. The District Court Executive is directed to substitute Kilolo Kijakazi as

18  Defendant and update the docket sheet.

19  2. Plaintiff's Motion for Summary Judgment, **ECF No. 17**, is **DENIED**.

20

ORDER - 46

3. Defendant's Motion for Summary Judgment, **ECF No. 18**, is **GRANTED**.

4. The Clerk's Office shall enter **JUDGMENT** in favor of Defendant.

The District Court Executive is directed to file this Order, provide copies to counsel, and **CLOSE THE FILE**.

DATED September 20, 2021.

_s/Mary K. Dimke_
MARY K. DIMKE
UNITED STATES MAGISTRATE JUDGE

ORDER - 47